M. M. MCATLIN, Appellee, v. ALICE MCATLIN, Appellant.

FEBRUARY 14, 1928.

*Preston & Preston*, for appellant.

*T. J. Bray*, for appellee.

MORLING, J.—Defendant's claim is that the decree of divorce was procured by fraud, and that defendant was prevented from defending by unavoidable casualty and misfortune. She relies on her own testimony, which, in substance, is:

Plaintiff, some five years before, had commenced a suit for divorce, which was settled. On March 22, 1925, plaintiff told defendant he was starting proceedings for divorce, and that, if defendant contested it, he would go away, and neither defend-

ant nor any of plaintiff's "people would know, and all the income I would have would be from the rent of this property I was living in. I was quite surprised. I was not expecting anything of the kind; I certainly was unstrung * * * he asked me to take this property, and let him hold the rest of the holdings; and I said I didn't want it, because I didn't feel that I could make a living out of it. And anyway, I didn't want to give him up. I knew he had no grounds for a divorce * * * There wasn't very much said; he just told me what he was going to do,—start the proceedings,—and wanted me to go up there and sign it; and if I did not, we would not know where he was. * * * I said I wanted to go down to his sister's in Bloomfield, and he took me down there, that day or the next day. We went down there and spent the night there, and talked with her about it. He told me who his lawyer was, and I said I would read the stipulation and take it to another lawyer and have it examined, which I did. The stipulation was prepared by his lawyer. * * * We came back Tuesday or Wednesday, and he still wanted to have me sign this stipulation. I had it examined first by Mr. Johnson Thursday, March 25th. I signed it the next day in Mr. Bray's office. Mr. Johnson was present, and the plaintiff. I accepted service of the notice at that time. Plaintiff said that, if I was going to contest the case, it was not necessary to sign it. I hesitated in signing the papers. I did not say that I would not contest it. I intended to appear, if I knew when the case would come up. I was not notified as to when it was taken up. I was trying to get help to contest it, at the time it was tried. * * * I was worried, and forced to do it,—I felt that way, at least. I had in mind the threat plaintiff had made that he would leave me, and I would not know where he was; and I felt I could sign this stipulation and yet defend it. * * * If I had been notified, or had known at the time it was being tried, I would have appeared without a lawyer. I intended to get another lawyer if I could. * * * When we left Mr. Bray's office the 26th, I went home. The next morning, I went back to Mr. Johnson's office, to ask him to defend the case. * * * Mr. Johnson told me that Mr. Bray was sick in the hospital, and the case would not come up for probably two days, and that I would have time to get another lawyer. I went to him again, Monday the 29th, and he said he was through with the case; and

so I went to employ another lawyer. I went to Mr. Keating's office, and he was sick. I then went to another lawyer, Mr. Ver Ploeg * * * I saw his brother. I told him I wanted to employ a lawyer, to defend my divorce case, and that I didn't know when it was coming up. He called the clerk's office, and found the case had been tried. That was between 1 and 2 o'clock, March 29th. I did not know the case was coming up at that time or on that day. * * * ''

By the stipulation signed March 26, 1926 (though, as said, drawn and read previously), the plaintiff, in the event of a divorce, was to pay defendant $500 cash, and convey to her a residence property, subject to a mortgage of $3,500, which defendant was to assume, and subject to taxes. Defendant was to have the household goods. If plaintiff obtained a sheriff's deed to a tract of Florida land on which he held a mortgage of $5,000 then under foreclosure, and if he sold the land within three years for a greater amount than was due on the mortgage, he was to pay one half the surplus to defendant. Defendant's testimony is that the residence property was valued too high; that, if all rooms were rented at the highest price, there would be nothing left for her, after payment of interest, heat, light, water, telephone, and taxes; that she had no means of paying off the mortgage; that plaintiff had sold the property in Florida for $12,000, got $7,000 and the $5,000 mortgage referred to; and that she did not know of more than $2,000 that plaintiff had spent of the $12,000; that Mr. Johnson said that the division of the property was not what she should have. Defendant says that, when she made the stipulation, she knew what the income and expenses were.

''I did not discuss with Mr. Johnson the chance of preventing a divorce, if contested. The main proposition was, which of the two property settlements would be best. I gave a receipt for the money at the bank [the $500].''

She also says that, while she was trying to see the lawyers, she telephoned her brother, but he did not come.

On the date of the stipulation, March 26, 1926, defendant signed acceptance of service of original notice, providing that the court might take jurisdiction and try the action during the then pending term. There was testimony in behalf of plaintiff to the effect that Mr. Johnson discussed the property and the

342

case with defendant, and advised her; that defendant was told she could defend, and told she might as well sign the stipulation and take what she could get; that, the next day after the decree was rendered, she took the deed and check for the $500, and receipted for them.

The court cannot approve of the haste with which this defendant was apparently pressed into signing the stipulation and waiver of the time for consideration and reflection to which, under the law, she was entitled. Nevertheless, it appears that the defendant was aware of her need for thought and advice. At her instance, there was a consultation with plaintiff's sister. She actually employed an attorney. The stipulation was signed after consultation with him and receiving his advice. No collusion is shown. Defendant had the stipulation examined by her lawyer, the day before it was signed, and she knew that she could defend. She deliberated, and sought to employ another lawyer. Defendant does not claim that she was misled by the acceptance of service or the stipulation, but by information as to the illness of the opposing attorney. She received this information on Saturday, and was told, according to her statement, that "the case would not come up for probably two days, and that I would have time to get another lawyer." Two days would be Monday, on which day the decree was taken. The day after the decree had been rendered, as she knew, she accepted the benefits of it. The burden is upon the defendant, and, regardless of the degree of proof that must be produced by her (see 19 Corpus Juris 167), we are of the opinion that neither fraud, unavoidable casualty, nor misfortune, which defendant makes the ground of her petition, has been shown.—*Affirmed.*

STEVENS, C. J., and FAVILLE, DE GRAFF, and ALBERT, JJ., concur.

WAGNER, J., not participating.